IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FILED 05 NOV '18 13:20 USDC-ORP

PORTLAND DIVISION

William X Nietzche (solely as trustee for
KRME International Trust),

William Kinney Jr.,

Julie Ann Metcalf Kinney,

    Plaintiff/Petitioner,

Case No. 3:18-CV-1930-SI

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR A
TEMEPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION**

v.

**FREEDOM HOME MORTGAGE CORPORATION (FHMC),**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS),**

**BENEFICIAL OREGON INC. (BOI),**

**HSBC HOLDINGS PLC (HSBC),**

**REGIONAL TRUSTEE SERVICES CORPORATION (RTSC),**

**MTGLQ INVESTORS L.P. (MTGLQ),**

**RUSHMORE LOAN MANAGEMENT SERVICES (RLMS),**

**U.S. BANK NATIONAL ASSOCIATION (USBNA),**

**CLEAR RECON CORPORATION (CRC),**

**BARRISTERS SUPPORT SERVICES (BSS),**

**URBAN HOUSING DEVELOPMENT (UHD),**

Et al.,

    Defendants/Respondent(s)

Plaintiff William and Julie Kinney ("the Kinney's"), by and through their trustee, hereby submit this Memorandum in support of plaintiff's Motion for Temporary Restraining Order and a Preliminary Injunction.

### 1. The Legal Standard for Granting Preliminary Injunctive Relief

Fed. R. Civ. P 65(b) authorizes the court to issue a temporary restraining order without notice to the adverse party if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required.

To obtain preliminary injunctive relief in the Ninth Circuit, plaintiff must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Assocs., Inc. v. City of Los Angeles, 559 F. 3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Nat. Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)). Based on the facts and circumstances set forth in the Verified Complaint and exhibits, and this Memorandum, and the declarations filed in support hereof, Plaintiff has met that burden.

### 2. Plaintiffs are likely to succeed on the merits of their claim for permanent injunctive relief against all Defendants.

Plaintiff the Kinney's commenced this action by filing a Verified Complaint seeking specific performance on the Deed of Trust, damages for breach of contract and state and federal statutory violations, and injunctive relief. As further described in the Verified Complaint, in May 2002, Plaintiff William and Julie Kinney (The Kinney's) fell victim to its first predatory loan after the Kinney's eldest teenage son at the time was incarcerated for traffic-related offenses in February 2002. The Kinney's, in order to afford legal representation for their son, executed its first (1st) mortgage Deed of Trust in favor of Defendant Freedom Mortgage Corporation (FMC). In March 2004, Plaintiffs, under extreme duress from an 'upward adjustable rate rider' in their first loan, coupled with the incarceration of their teenage son, received a solicitation call from Beneficial Oregon Incorporated (BOI) wherein Plaintiffs fell victim to another predatory refinancing agreement, therewith executing a second (2nd) mortgage Deed of Trust with BOI.

Prior to this, at some point during the period of May 2002 through March 2004, FMC had assigned its beneficial interest to Mortgage Electronic Recording Systems (MERS), without notice or knowledge to plaintiff, and without making the proper recordation in the mortgage records at the county level. MERS then assigned FMC's beneficial interest to George P. Fisher, Successor Trustee acting on behalf of BOI. The Kinney's remained in compliance with the second (2nd) mortgage Deed of Trust until about January 2017, where the Kinney's received billing cycles from two separate servicers, HSBC - whom is the parent company of BOI - and Rushmore Loan Management Services (RLMS). The Kinney's then began its onslaught of written discovery request to determine which servicer was entitled to enforce the Note. Subsequently, the Note goes through a series of assignments, eventually ending up with U.S. Bank REO Trust (USBT). In June 2018, Clear Recon Trust and RLMS inexplicably declared a default and initiated a non-judicial foreclosure proceeding that took place October 23, 2018, wherein Defendant Urban Housing Development (UHD) purportedly bought the Kinney's property.

### A. Defendants failed to comply with ORS 86.735(1).

A trustee may foreclose a trust deed by advertisement and sale if, and only if, the trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage record in the counties in which the property described in the deed is situated." ORS 86.735(1). Even if a mortgagee names Mortgage Electronic Registration Systems, Inc. (MERS") as the nominee for the beneficiary, prior to commencing a non-judicial foreclosure, the trustee still must record all unrecorded, intervening assignments. Burgett v. MERS, 2010 WL 4282105, at *2-3 (D. Or. October 20, 2010); Rinegard-Guirma v. Bank of America, No. 10-CV-1065-PK, 2010 WL 3655970, at *2 (D. Or. September 15, 2010); McCoy, III v. BNC Mortgage (In re McCoy, III), No.10-6224-fra, ____B.R._ (Bankr. D.Or. February 7, 2011); Ekerson v. MERS, No. 11-CV-178-HU (D. Or. February 11, 2011).

In this case, Freedom Mortgage Corporation is the original lender. (Compl. ¶ 17; Ex. A.) FMC thereafter sold, assigned, or otherwise transferred the Note and the beneficial interest in the Trust Deed to MERS. (Compl. ¶ 17; Ex. A.) Thereafter, MERS purported to sell, assign or transfer its interest in the Note and Deed of Trust to Beneficial Oregon, Inc. or an affiliate or subsidiary of HSBC plc (HSBC) (collectively "BOI"). (Compl. ¶ 22.) Thereafter, BOI or

BENEFICIAL 1 INC. (as successor to BENEFICIAL OREGON) purported to sell, assign or transfer its interest in the Note and Trust Deed, either directly or through one or more intervening entities, to MTGLQ INVESTORS, L.P., either for itself or as trustee of a mortgage-backed securities trust. (Compl. ¶38.) Thereafter, the Note goes through a series of assignments, eventually ending up with U.S. Bank REO Trust (USBT), a mortgage-backed securities trust and an affiliate or subsidiary of U.S. Bank National Association (USBNA). (Compl. ¶ 44, 47.) Thereafter, USBNA then purportedly appoints Clear Recon Corporation (CRC) as its successor trustee. (Compl. ¶ 66.) To date, CRC has failed to record any and all unrecorded, intervening assignments in the real property records of Multnomah County as required by ORS 86.735(1). (Compl. ¶29.) This defect, by itself, is sufficient grounds to enjoin the pending non-judicial foreclosure sale.

### B. Defendants failed to comply with ORS 86.735(2).

A trustee may foreclose a trust deed non-judicially only if "there is a default by the grantor or other person owing an obligation." ORS 86.735(2). As set forth in detail in the Verified Complaint, Plaintiffs remained current with payments on said second (2nd) mortgage loan up until about January 2017 where two different servicers, BOI and RLMS, both requested the same January 2017 billing cycle. (Compl. ¶¶ 33-36.) May 2017, Plaintiffs discovered their 'Original Customer Copy' of said second (2nd) Deed of Trust wherein said Deed of Trust was left blank, bearing no signatures of Plaintiffs nor a notary signature. (Compl. ¶¶ 37 Ex.G) The Kinneys then began its onslaught of written discovery request (QWR's) to determine which servicer was entitled to enforce the Note. (Compl. 41, 59-72.)

On the Kinney's part, they performed the agreement up until the qualified dispute arose in January 2017. The devious tactics of repeatedly misleading the Kinneys that their requests for discovery were under review, then suddenly declaring the default and initiating a foreclosure, Defendants USBNA, CRC and RLMS have waived any claim of default and the right to execute the power of sale. (Comp ¶ 72, 74) Because the Kinneys were not in default when the dispute arose in January 2017, neither RLMS nor USBNA had any right under the Note or Trust Deed to declare a default, and absent a default by the grantor, ORS 86.735(2) prohibited CRC from commencing a non-judicial foreclosure sale. This defect too is fatal to Defendants' attempted foreclosure.

## C. The recorded Assignment of Deed of Trust is ineffective to transfer Mortgage Freedom Corporation's interest in the Note and Trust Deed to BOI.

USBNA's standing to foreclose depends on a chain of recorded assignment from MTGLQ, who in turn received an assignment from BOI, who in turn received an assignment from MERS, who in turn received an un-recorded assignment from FMC. The assignments are void ab initio and ineffective and fails to transfer any beneficial interest or power of sale to USBNA for the following reasons.

First, upon information and belief, George P. Fisher, who signed documents both as "Assistant Secretary" for MERS, the assignor, and as "Successor Trustee" for BOI, the assignee, is not an employee of MERS or an employee or agent of FMC. Plaintiff believes that discovery will show Fisher never had corporate authority from FMC to assign its beneficial interest, if any.

Second, as of the date of the reconveyance, March 17, 2004, MERS had no beneficial interest to assign to anyone. Upon information and belief, shortly after the loan was originated in 2002, FMC sold, assigned or otherwise transferred all right, title and interest in the Note and Trust Deed to MERS without recording said transfer in the mortgage records at the county where the subject real property is located. (Compl. ¶ 17-32.) MERS thereafter, either directly or through intermediaries, purported to sell, assign or transfer all right, title and interest in the Note and Trust Deed to BOI, either for itself or as trustee of a mortgage-backed securities trust. (Compl. ¶¶ 17, 24-26, 29-32.) At the time the said Deed of Reconveyance was executed, MERS had no legal or equitable interest in the first (1st) mortgage Deed of Trust to reconvey to BOI and, therefore, any purported assignments thereafter are ineffective and thus void ab initio.

Third, the assignment purports to assign the Trust Deed but not the Note. (Compl. Ex. D.) MERS is not named in any capacity in the Note and never had and has never claimed any interest in the Note. (Compl. ¶ 10.) MERS suddenly appears and is mysteriously named beneficiary for the original beneficiary on the Trust Deed. (Compl. Ex. A at 23 ("the Kinneys understands that MERS holds no legal title to the interests granted by Borrower in this Security Instrument...").) Furthermore, the Note is an instrument under the Uniform Commercial Code ("UCC") and may be enforced only by a holder or a non-holder in possession with the right of a holder. ORS 73.0301. USBNA claims to be the holder of the Note, and, as such, would be entitled to enforce the Note or to transfer physical possession of the Note to its servicer for purposes of enforcing

the Note. However, for USBNA to be a holder, USBNA must show that the original note, either indorsed in blank or specifically indorsed to USBNA and bearing any necessary intervening indorsements, was delivered into its possession prior to commencing the foreclosure action. ORS 73.0201-0205; ORS 73.0501; See Kemp v. Countrywide Home Loans, 2010 Bankr. LEXIS 4085 (Bankr. D.N.J. Nov. 16, 2010). Given the recent disclosure in Kemp that it was Countrywide's policy or practice not to transfer possession of the Note to the trustee during the securitization process, plaintiff believes that discovery will show, at the time foreclosure was commenced, neither RLMS, CRC nor USBNA were holders or non-holders in possession with the right to enforce. In other words, USBNA, RLMS and CRC effectively lacked "standing" to commence a foreclosure.

For all of the reasons set forth above, this Court of record should find that plaintiff is likely to prevail on the merits of his claim for injunctive relief and should enjoin the pending foreclosure sale. The Kinney's were never in default under the terms of the Trust Deed. Even if the Kinney's were in default, RLMS, CRC and USBNA failed to satisfy conditions precedent for accelerating the Note and exercising the power of sale. CRC has failed to comply with nearly every requirement in the non-judicial foreclosure statute, including failure to record all assignments and failure to comply with the notice requirements. Furthermore, plaintiff believes that discovery will show Defendants did not even have standing to foreclose at the time foreclosure was commenced and that Defendants or their agents knowingly prepared and recorded unauthorized and false documents in support of the foreclosure. Allowing the foreclosure to proceed in light of these defects would work a substantial injustice.

### 3. Plaintiff is likely to succeed on the merits of their contract claims against RLMS and USBNA.

In addition to the Kinney's claim for injunctive relief, the Kinney's have asserted various claims against Defendants for specific performance, breach of contract, promissory estoppel, accounting and violations of certain state and federal laws. Each of these claims, other than claims for specific performance and an accounting, would entitle the Kinney's to an award of actual or statutory damages and, for some claims, punitive damages and/or attorney fees. For purposes of determining whether preliminary injunctive relief should issue, the Court should also

find that the Kinney's are likely to prevail on the merits of their damage claims, and particularly the specific performance and breach of contract claims.

The Kinney's fully performed all terms and conditions of the Note and Deed of Trust prior to raising their dispute and prior to service of the Notice of Default, and the Kinney's are ready, willing and able to perform pursuant to the Deed of Trust, including tendering any payments that the Kinney's would have made but for CRC's wrongful conduct in misleading the Kinneys that the Kinneys QWR's were under review, and in not answering discovery requests and initiating the foreclosure. CRC and USBNA have breached the Deed of Trust section 23 by: a) failing to provide discovery when a dispute arose as to which servicing company was entitled to enforce the Note; b) failing to submit to arbitration and/or meeting face to face to validate Defendants right to enforce the Note; c) wrongfully declaring a default; and d) foreclosing despite the Kinney's performance of the Deed of Trust up until the dispute. (Compl. Ex. C at 23) The Kinney's do not have adequate remedy at law because the Kinney's will be displaced from their property if the Deed of Trust is not enforced. For the reasons set forth herein, the Kinneys are entitled to a decree for specific performance of the Deed of Trust.

The Kinney's will also succeed on their breach of contract claim. Defendants breached section 12 under the Deed of Trust by not giving plaintiff's certified mailings of time-sensitive documents. Section 12 entitled Notice, subtitle (a) under the Deed of Trust specifically states: "(a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the address stated in the Note or at such other address as Borrower may designate by notice to Lender as provided herein". (Compl. Ex. C at 12.) Several times Defendants served the Kinney's important and time-sensitive documents by regular U.S. first class mail breaching the terms of the Deed of Trust. (Compl. ¶ 52, 54, 55.) As a direct and proximate result of RLMS's, CRC's, and USBNA's breaches of the Deed of Trust, the Kinney's have incurred late charges, default- and foreclosure-related fees including trustee and attorney fees, additional interest and penalties, damage to the Kinney's credit, and other damages in an amount to be proven at trial. The Kinney's are entitled to their damages, together with their reasonable attorney fees and cost.

If the Kinney's are unable to prove specific performance and breach of contract, then it will nevertheless be true that any default was substantially caused by RLMS's and CRC's knowingly false statements to the Kinney's and misleading conduct, which induced the Kinney's to believe

their requests for discovery were being investigated, and to refrain from pursuing any alternative for curing the default, modifying the loan, or avoiding foreclosure. Foreclosure is an equitable remedy and equity generally requires the party seeking the remedy to have "clean hands." On these facts, RLMS nor CRC nor USBNA can hardly claim that it would be equitable or just to allow the foreclosure to proceed while the merits of the specific performance and contract claims are tried.

### 4. Plaintiff is also likely to succeed on the merits of their statutory damage claims against CRC and RLMS.

The Kinney's are also likely to prevail on their various state and federal statutory claims for damages against CRC and RLMS.

As trustee of a trust deed, CRC owes a limited duty of good faith and due diligence to the Kinney's. Wright v. Associates Financial Services Co. of Oregon, Inc., 59 Or.App. 688, 695, 651 P.2d 368,1373, (Or. App.1982) (recognizing that trustee of a trust deed has "a duty of good faith and due diligence"); see also Blodgett v. Martsch, 590 P.2d 298, 302 (Utah, 1978) ("The duty of the trustee under a trust deed is...to treat the trustor fairly and in accordance with a high punctilio of honor."). While not a true fiduciary duty, this limited duty of good faith and due diligence at least requires the trustee of a trust deed to comply with the requirements of the Oregon Trust Deed Act and the terms of the applicable Trust Deed in carrying out a non-judicial foreclosure. As set forth above, CRC has failed to comply with nearly every requirement of ORS 86.735.

Furthermore, CRC has violated the Fair Debt Collection Practices Act ("FDCPA") and the Oregon Unlawful Debt Collection Practices Act ("UDCPA") by commencing a non-judicial foreclosure when there is no present right of possession by the beneficiary of the Trust Deed. Although trustees foreclosing on a trust deed are generally not considered "debt collectors" under the FDCPA, pursuant to 15 U.S.C. § 1692a(6) and 692f(6), the definition of "debt collector" expressly includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). CRC is principally engaged in the enforcement of security interests by conducting foreclosures of trust deeds and mortgages for lenders and servicers. (Compl. ¶ 62.) As a "debt collector," CRC is prohibited from:

taking or threatening to take any nonjudicial action to effect dispossession or

disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest.

15 U.S.C. § 692f(6)(A). CRC has sent foreclosure notices using the mails and attempting to effectuate a non-judicial foreclose on the Kinney's residence when there is no present right to possession because the Kinney's are not in default under the Note, RLMS and USBNA is not a "holder" or non-holder entitled to enforce the Note, and CRC have not satisfied all conditions precedent to exercising the power of sale. *(Compl. Tit 41-43, 48, 63, 78, 80-82.) The same acts by CRC also violate the Oregon counterpart to the FDCPA. Therefore, the Kinney's are likely to prevail on their FDCPA and UDCPA claims against CRC.

The Kinney's are also likely to prevail on their RESPA claim against RLMS and CRC. The Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605, requires servicers of federally related mortgage loans to take certain actions in response to a Qualified Written Request ("QWR") from a Borrower. The Kinney's, by and through their trustee, sent a total of four (4) QWRs to RLMS throughout January 2017 up until October 2018, two of said request went to CRC. RLMS and CRC failed to provide written acknowledgement of the requests within the required time, failed to provide a written explanation or clarification, and failed to provide any of the information requested. (Compl. ¶ 59-72.) Furthermore, RLMS and CRC have failed to administer the Kinney's account in compliance with RESPA. (Compl]. ¶ 101.) This pattern and practice of violations entitles the Kinney's to actual damages, statutory damages and attorney fees. 12 U.S.C. § 2605(f).

Based on the foregoing, the Kinney's are likely to succeed on the merits of each of their damage claims against RLMS and against CRC.

**5. Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.**

In the absence of preliminary injunctive relief, the Kinney's home will be effectuated in a non-judicial foreclosure sale that took place on the steps of the Multnomah County courthouse at approximately 11:00 a.m. on October 23, 2018. (Compl. ¶ 75-86.) Upon information and belief, the Kinney's will not only lose their home, the Kinney's will lose the benefit of the more than $12,000 in excess payments they have made to BOI since May 2004, payments which have never been credited to the account. The Kinney's will lose the opportunity to pursue alternatives to foreclosure that the Kinney's would have pursued had the Kinney's not been misled by

RLMS's promises to look into the matter of who was entitled to enforce the Note. The Kinneys are both elders and cannot survive being displaced on the streets of Portland Oregon. The Kinney's credit will be irreparably tarnished by the foreclosure. None of these harms can be fully remedied by a post-foreclosure award of damages. There is no question that the Kinney's will suffer irreparable harm in the absence of preliminary relief.

**6. The balance of equities tips in Plaintiffs favor, and preliminary injunctive relief is in the public interest.**

As detailed in the Verified Complaint, the Kinney's did everything a homeowner in their position is supposed to do. A valid dispute arose wherein the Kinney's had recieved a January billing cycle from two different servicers. (Compl. ¶ 36.) The Kinneys did what any reasonable person would do, beginning their due diligence and discovered numerous defects in their first and second loans. (Compl. ¶ 17-23.) In June of 2016, up until the purported foreclosure of their home in October 2018, the Kinneys then initiated further discovery requests to Defendants. (Compl. ¶ 41, 59, 62, 64.) Defendants used devious tactics in their responses to the Kinneys, misleading the Kinneys that their request were serious and under review. (Compl. ¶ 72, 74.) The Kinneys requested to clear up any confusion regarding their account being suspicious of possible elder abuse fraud and a lost mortgage Note.  RLMS and CRC both regarded the Kinneys QWR's as a dispute pursuant to FDCPA. Up until the purported foreclosure sale in October 2018, RLMS induced the Kinneys into believing their matter was being investigated, all the while initiating a non-judicial foreclosure behind the scenes on the Kinneys home. The equities clearly tip in the Kinneys favor.

Furthermore, it is in the public interest to require servicers to comply with the terms of the loans they service. Homeowners today are at the mercy of servicers who charge unauthorized fees, refuse to identify the owners or investors holding the notes, fail to negotiate or comply with reasonable modifications, and who rely on non-judicial foreclosures to take unsophisticated borrowers' homes with minimal judicial oversight. The public has an interest in ensuring that the few consumer protections that exist are actually enforced.

## 7. Conclusion

Based on the foregoing, together with the Verified Complaint, exhibits thereto, and the declaration filed in support of plaintiff's motion, plaintiff respectfully requests that this court enter a Temporary Restraining Order restraining defendants from effectuating their non-judicial foreclosure sale of the Kinney's home and until the merits of plaintiff's motion for preliminary injunction are determined. Plaintiff further requests that, after notice and an opportunity to be heard, the court enter a Preliminary Injunction restraining defendants from filing a Forcible Entry Detainer to evict the Kinney's from their home pending a trial on the merits of plaintiff's claims.

DATED this ___5th___ day of November, 2018.

I affirm the aforesaid to be true and correct under penalties of perjury.

By _____/s/ JAMKinney © All Rights Reserved_____
Julie Ann Metcalf Kinney
In Solo Proprio, In Proper Persona, Sui Heredes, Sui Juris [Pro se]

By _____/s/ William X Nietzche_____  All Right Reserved, d-o-it
William X Nietzche, as trustee for KRME International Trust
In Solo Proprio, In Proper Persona, Sui Heredes, Sui Juris [Pro se]