# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WILLIAM X. NIETZCHE, *et al.*,** | Case No. 3:18-cv-1930-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **FREEDOM HOME MORTGAGE CORPORATION, *et al.*,** | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiffs William Kinney, Jr.[1] and Julie Ann Metcalf Kinney[2] (the "Kinneys") were the

owners of real property located in Portland, Oregon. Plaintiff William X. Nietzche is the Trustee

of the KRME International Trust (the "KRME Trust"),[3] which is "is domiciled in the ancient

---

[1] The First Amended Complaint also identifies Mr. Kinney as "Mickey Pharaoh."

[2] The First Amended Complaint also identifies Ms. Kinney as "Jew-el Empress of Compassion."

[3] A trustee may not appear *pro se* on the trust's behalf unless the trustee is the trust's "beneficial owner." *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Becker v. Wells Fargo Bank, NA, Inc.*, 2012 WL 6005759, at *4 (E.D. Cal. Nov. 30, 2012). The Amended Complaint does not allege that Mr. Niezche is a beneficiary of the KRME Trust. The Amended Complaint alleges that Ms. Kinney is a beneficiary. If Mr. Nietzche is not a beneficiary, he cannot appear *pro se* on behalf of the KRME Trust. Because the Amended

Mosan/Salish Territory for Multnomah [Portland, Oregon USA] Republic" and "holder in due course and secured-first-party creditor over the parcel of land and the subject real property structure interest in this matter."

This case arises from a nonjudicial foreclosure proceeding. Plaintiffs bring suit against numerous financial institutions, certain attorneys who represented some of the institutions, the "State of Oregon Corporation" (purportedly suing the state of Oregon), the "United States Corporation Company" (purportedly suing the United States), Urban Housing Development, LLC ("UHD"), who purchased the subject property at foreclosure, and a person affiliated with UHD, Roman Ozeruga. Plaintiffs filed an original complaint in this action, against which several defendants filed motions to dismiss. While those motions were pending, the Court provided Plaintiffs with more than two months to prepare an amended complaint in lieu of responding to the motions to dismiss. Plaintiffs' First Amended Verified Complaint ("Amended Complaint") added numerous claims and numerous defendants.

Plaintiffs allege 35 claims for relief against 21 named defendants and numerous Doe defendants. Plaintiffs' claims can be summarized as claims for: (1) specific performance; (2) various claims for breach of contract; (3) promissory estoppel; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"); (5) violation of Oregon's Unlawful Debt Collection Practices Act ("UDCPA"); (6) breach of trustee's duty; (7) various types of fraud, including "confidence games"; (8) violation of Oregon's Unlawful Trade Practices Act ("UTPA"); (9) violation of the Real Estate Settlement and Procedures Act ("RESPA"); (10) quiet title;

_____

Complaint does not allege that he is a beneficiary, the Court could dismiss the claims brought by Mr. Nietzche on behalf of KRME Trust on this ground. *C.E. Pope Equity*, 818 F.2d at 697-98. Because, however, a review of the claims on the merits, as discussed herein, demonstrates that dismissal of all claims with prejudice is appropriate, the Court considers the merits of all claims alleged by all Plaintiffs.

(11) violation of Oregon's abuse of vulnerable persons statute; (12) rescission under the Truth in Lending Act ("TILA"); (13) "lack of standing to foreclose";[4] (14) slander of title; (15) due process violations; (16) violation of the United Nations Declaration on the Rights of Indigenous Peoples; (17) the federal crime of genocide; (18) adverse possession; (19) unjust enrichment; (20) civil conspiracy; (21) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (22) abuse of process; (23) wrongful foreclosure;[5] (24) Pennsylvania's Fair Credit Extension Uniformity Act; (25) "unconscionable contract"; and (26) intentional and negligent infliction of emotional distress. Plaintiffs also allege claims for accounting, constructive trust, and declaratory and injunctive relief, but under the circumstances of this case those are better viewed as remedies Plaintiffs may request if they prevail on any of their claims, and not separate causes of action.

Many motions are pending before the Court, including motions to dismiss by numerous defendants, two motions by Plaintiffs requesting reconsideration of two of the Court's previous orders, motions for default filed by Plaintiffs, and several other motions filed by Plaintiffs. For the reasons discussed below, the motions to dismiss are granted, and this case is dismissed with prejudice. All other pending motions are denied as moot.

---

[4] The Court liberally construes Plaintiffs' claim for "lack of standing to foreclose" as asserting violations of the Oregon Trust Deed Act ("OTDA") that resulted in the foreclosing entities not having authority under the OTDA to foreclose.

[5] The court liberally construes Plaintiffs' claim for "wrongful foreclosure" as asserting violations of the OTDA that resulted in fundamental flaws in the foreclosure proceedings, which made the foreclosure defective and subject to post-sale challenge.

## STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

*Pro se* plaintiffs receive special dispensation. A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (citation and quotation marks omitted). But even a *pro se* plaintiff must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## B. Motion to Dismiss Under Rule 12(b)(2)

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of its complaint, uncontroverted allegations must be taken as true. *Id*. In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.* (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute is co-extensive with

constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L).

## BACKGROUND

In the Amended Complaint, Plaintiffs refer to and attach numerous documents. Although the Court must accept as true well-pleaded allegations in the Amended Complaint, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

On or about May 3, 2002, the Kinneys borrowed $96,300 from Defendant Freedom Mortgage Corporation dba Freedom Home Mortgage Corporation ("Freedom"). This loan had an adjustable rate. The Kinneys executed a Deed of Trust on the Kinneys' real property located at 4406 N. Mississippi, Portland, OR 97217 (the "Property"). This 2002 Deed of Trust secured the promissory note on the $96,300 loan. The Deed of Trust listed Freedom as the "Lender" and listed the "Lender" as the beneficiary (thus, Freedom was the beneficiary). The Trustee was Millard S. Rubenstein.

In early 2004, when the adjustable rate increased, Plaintiffs refinanced with Beneficial Oregon, Inc. ("Beneficial") and paid off the Freedom loan. A Deed of Reconveyance, dated April 9, 2004 and recorded April 22, 2004, extinguished the 2002 Deed of Trust. This Deed of Reconveyance contained a scrivener's error that stated that the beneficiary of the 2002 Deed of Trust was MERS, even though the 2002 Deed of Trust listed Freedom as the beneficiary. The Deed of Reconveyance was signed by George P. Fisher, as the Successor Trustee to Millard S. Rubenstein.

On or about March 12, 2004, the Kinneys executed a Deed of Trust securing their new loan. The 2004 Deed of Trust was recorded on March 17, 2004. It secured a loan in the amount

of $126,524.92. The beneficiary of this 2004 Trust Deed was Beneficial and the Trustee was Regional Trustee Services. The Kinneys also executed a Loan Repayment and Security Agreement (the "Note").

On December 28, 2016, Beneficial sent the Kinneys a notice that as of December 1, 2016, their loan had been transferred from Beneficial to MTGLQ Investors, L.P. ("MTGLQ"). This notice stated that MTGLQ was not the loan servicer and that payments should continue to be sent to the loan servicer, who continued to be Beneficial. An Assignment of Deed of Trust executed on May 8, 2017, and recorded on May 11, 2017, purports to document the assignment. The assignment is from Beneficial Financial 1, Inc. ("BF1"), as successor through merger to Beneficial, to MTGLQ. This assignment was signed by MTGLQ as "attorney-in-fact" for BF1, by Ed Chavez, Vice President of MTGLQ. At this point, it appears that the Note was further indorsed, in blank, through an undated Allonge. The Allonge was signed by Biff Rogers, Vice President of MTGLQ, with MTGLQ serving as attorney-in-fact to BF1, successor to Beneficial.

The Kinneys then received notice in January 2017 that their loan servicer was changed from Beneficial to Rushmore Loan Management Services LLC ("Rushmore"). The Kinneys received an Interim Payment Coupon instructing them that Beneficial would stop receiving mortgage payments as of February 1, 2017, and Rushmore would begin receiving payments after that date. The Kinneys still had their December 31, 2016 statement from Beneficial describing that their payment is due January 17, 2017 and providing a payment coupon to be used to make that payment, payable to Beneficial. The loan servicer change notice, however, explained that Beneficial would not accept that January payment after February 1, 2017, and provided an "interim" coupon to use to make that January 2017 payment, payable to Rushmore.

On June 7, 2017, the Kinneys, through Mr. Nietzche, sent a letter to Rushmore requesting "validation" that Rushmore had a "true claim to collect a debt" from the Kinneys, and attached a 44-question "Debt Collector Disclosure Statement" form. This form included a statement that failure to complete and return the statement, signed under penalty of perjury, constitutes "tacit agreement that Debt Collector has no verifiable, Lawful, bona fide claim regarding the hereinabove-referenced alleged account, and that Debt Collector tacitly agrees that Debt Collector waives all Claims against Respondent." ECF 146-2 at 41. Rushmore responded on June 19, 2017 that it was reviewing the correspondence, but that the owner of the loan was "Loan Acquisition Trust 2017-RPL1." On July 24, 2017, Rushmore responded to the Kinneys' June 7th request. Rushmore provided copies of the Note, Deed of Trust, Assignment, payment history, and most recent billing statement. Rushmore declined to provide the other requested information as confidential or irrelevant. This letter also stated the Kinneys were seven payments in arrears.

On June 22, 2017, Rushmore sent a notice to the Kinneys that their loan had been sold on May 31, 2017, to U.S. Bank Trust National Association ("U.S. Bank Trust"), not in its individual capacity but solely as owner trustee for Loan Acquisition Trust 2017-RPL1. MTGLQ's assignment to U.S. Bank Trust, dated August 10, 2017, was recorded in Multnomah County Records on November 16, 2017. This assignment was signed by Patrick Couture, Vice President of MTGLQ.

On February 22, 2018, the Kinneys received another notice that their loan had been sold or transferred. This transfer was to U.S. Bank Trust, not in its individual capacity but solely as owner trustee of REO Trust 2017-RPLI. The assignment from U.S. Bank Trust's "Loan Acquisition Trust 2017-RPL1" to "REO Trust 2017-RPL1" was recorded in Multnomah County

records on March 30, 2018. This assignment was signed by Rushmore, as attorney-in-fact for "Loan Acquisition Trust 2017-RPL1," by Jeannette Kabayan, Vice President of Rushmore.

On April 27, 2018, Mr. Nietzche returned the certificate of compliance with Oregon's foreclosure avoidance program form, enclosing an April 17, 2018 statement of Ms. Kinney that stated:

> I, by affidavit am a declared living American sovereign standing with Treaty Law of God do accept your offer for value and for the following reasons I am returning your offer, rejected, for discharge and closure:
>
> 1) You have brought United States corporate law with color outside your jurisdiction and without an international treaty within My republic State as you have no jurisdiction on the land of Oregon;
>
> 2) You have falsely accused me of being a citizen of the UNITED STATES;
>
> 3) You are trespassing and criminally attempting to convert corporate statutes with color into lawful criminal codes without chartered regulatory and delegated jurisdictional authority;
>
> 4) You are not registered or chartered for conducting business in Oregon by My republic State and;
>
> 5) You failed to state a lawful claim upon which relief can be granted.

ECF 146-2 at 55.

On May 30, 2018, Clear Recon Corp. ("Clear Recon") was appointed as successor trustee of the 2004 Deed of Trust, and this appointment was recorded on June 6, 2018 in the records of Multnomah County.

On June 6, 2018, Rushmore responded to the April 27, 2018 correspondence from the Kinneys. Rushmore noted that the Uniform Commercial Code ("UCC") does not apply to the Kinneys' payments owed on their residential mortgage loan and thus their attempted rescission

or tender of property was ineffective and rejected. Rushmore further noted that the Kinneys owed on the mortgage for the January 2017 monthly payment. Rushmore noted that if the terms of the loan are not complied with, Rushmore will pursue all options, including foreclosure.

On or about June 10, 2018, Plaintiffs received a Debt Validation Form from Clear Recon, setting forth the amount due on the loan. On or about June 15, 2018, Defendant Barrister Support Services ("Barrister") posted a Trustee's Notice of Sale on the Property. This notice stated that the Kinneys were in default by failing to pay the monthly payments from January 2017 through May 2018 (17 payments). It provided the amount required to reinstate the loan ($19,149.98) and to pay off the loan ($112,338.63). The foreclosure sale was scheduled for October 23, 2018. Clear Recon recorded the Notice of Default and Election to Sell in Multnomah County records on June 12, 2018.

On July 10, 2018, Mr. Nietzche purported to serve a "Writ in the Nature of Discovery and Disclosure" and a voided copy of the Trustee's Notice of Sale on Rushmore. Mr. Nietzche demanded certified and verified copies or inspection of original loan related documents. Rushmore responded that Mr. Nietzche was not authorized on the loan account. The Kinneys then authorized Mr. Nietzche on their loan account.

On August 17, 2018, Mr. Nietzche sent an "Affidavit of Fact and Discovery: Writ of right" pursuant to "UCC 1-202" to Clear Recon and Rushmore. Mr. Nietzche asserted his "constitutional and contractual rights to discovery." He demanded documents and information, including answers to questions such as "what is your nationality" and "does the word 'Foreclosure' mean 'Before the closure?'"

On August 22, 2018, Clear Recon responded that it was treating the correspondence as disputing a debt and noted that it was the foreclosure trustee and not the loan servicer. Clear

Recon provided Rushmore's contact information. Clear Recon also attached exhibits, including the Note (the 2004 Loan Repayment and Security Agreement), the Allonge, the 2004 Deed of Trust, the assignments of the Deed of Trust, and the appointment of the successor Trustee.

Rushmore also responded, on August 24, 2018, again providing copies of the Note, Deed of Trust, Assignment, Allonge, payment history, most recent billing statement, notice of sale, ownership of the loan, notice of servicing transfer, and a copy of the August 6, 2018 payoff notice.

On September 10, 2018, Mr. Nietzche sent an "Affidavit of Fact Notice of Default Judgment," by which he claimed that because of Clear Recon and Rushmore's failure to provide the requested discovery, "this notice of default judgment is being submitted and all claims, petitions, suits, filings with any third party corporations regarding Our ancestral estate be dismissed and expunged." He quoted the U.S. Constitution, a case from Alabama, a case from Illinois, and then asserted that Oregon State courts, because they are not Article III courts, do not have authority under the "Supreme Law of the Land."

On October 5, 2018, Mr. Nietzche sent a "Writ of Right—Affidavit of Fact" to Rushmore, Clear Recon, and U.S. Bank Trust. This document opened by stating: "Praecipe for entry for adverse order, rebuttal and estoppel." The document purported to be a "a Lis Pendens (Pending) revocation of signature by the rightful beneficiar(ies) Mickey, Pharaoh; and Jewel, Empress of Compassion, for the House KRME." It stated it was a good faith attempt to "clear up any misrepresentations or confusion" regarding the dispute and stated that the respondents had seven days before further action would be taken.

On October 18, 2018, Rushmore responded that it deemed Mr. Nietzche's correspondence to be duplicative of previous requests for which Rushmore had already provided

responses and documentation. Rushmore provided a copy of its earlier responses and noted that it was now considering the matter closed and intended to proceed with the foreclosure on October 23, 2018.

The nonjudicial foreclosure sale took place on October 23, 2018. UHD purchased the Property. The Trustee's Deed was signed on October 25, 2018, and recorded on November 6, 2018. The Trustee's Deed named UHD as the recipient of all of the Kinneys' right, title, and interest in the Property. UHD's short-term financing company, Defendant Rain City Capital of Oregon LLC ("Rain City"), was named on the deed for security purposes only.

On November 5, 2018, Plaintiffs filed their original complaint in this case. On November 19, 2018, UHD filed a forcible entry and unlawful detainer ("FED") action in state court.

On December 26, 2018, Plaintiffs recorded a purported Quitclaim Deed purporting to transfer the Property from the Kinneys to Mr. Nietzche as Trustee of the KRME Trust for the consideration of 21 silver dollars. This Quitclaim Deed was titled "Quitclaim Deed Allodial Aboriginal Paramount Clear Perfect Title of Conveyance/Transfer of Hereditaments Corporeal and Incorporeal to Private Trust." It was 12 pages and cited some canons of positive law, sections of the U.N. Declaration on the Rights of Indigenous Peoples, and a letter from George Washington. It was served on Defendants MTGLQ, U.S. Bank Trust, Rushmore, MERS, UHD, Clear Recon, and Barrister. It also was served on the Governor of Oregon, the Oregon Attorney General, the Oregon Secretary of State, the Mayor of the City of Portland, the Multnomah County Clerk, the Multnomah County Sheriff's Office, the Archdiocese of Portland, and the "SSKTR Chief Custodial Minister" in Sweden.

## DISCUSSION

The Court first discusses certain claims, regardless of the defendant against whom they are asserted. The Court then discusses by defendant whether Plaintiffs state any of the remaining claims.

### A. Dismissal of Certain Claims

In their response brief, Plaintiffs "relinquished" their claims for "confidence games" and under Pennsylvania's Fair Credit Extension Uniformity Act. These claims are dismissed with prejudice.

Plaintiffs' claims under 18 U.S.C. § 1091, the federal crime of genocide, are dismissed with prejudice. There is no private right of action under this criminal statute. *See* 18 U.S.C. § 1092 (noting that nothing "in this chapter [shall] be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding"); *see also Clark v. United States*, 2018 WL 1950427, *4 (E.D. Ky. April 25, 2018) (noting that 18 U.S.C. § 1091 "is a criminal statute which [plaintiff] lacks standing to enforce"). Claims under the United Nations Declaration on the Rights of Indigenous Peoples are also dismissed with prejudice because it does not create obligations binding in federal court that give rise to a private right of action. *See Van Hope-el v. United States Dep't of State*, 2019 WL 295774, at *3 n.2 (E.D. Cal. Jan. 23, 2019), *aff'd sub nom. Hope-El v. U.S. Dep't of State*, 2019 WL 3941181 (9th Cir. June 26, 2019) ("Indeed, there is no private right of action under declarations such as the United Nations Declaration on the Rights of Indigenous Peoples and the American Declaration of the Rights of Indigenous Peoples." (citing cases)).

Plaintiffs seek rescission under TILA. Plaintiffs allege that they sent their rescission notice on October 5, 2018. Under TILA, however, the "conditional right to rescind does not last forever," and expires after three years "[e]ven if a lender *never* makes the required disclosures."

*Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, ---, 135 S. Ct. 790, 792 (2015) (emphasis in original). "Equitable tolling does not apply to rescission under this provision of TILA, because '§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period,' even if the lender has never made the required disclosures." *Taylor v. Money Store*, 42 F. App'x 932, 933 (9th Cir. 2002) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412-13, 419 (1998)). Thus, because Plaintiff's conditional right to rescission expired in 2007 and there is no equitable tolling, Plaintiff's TILA rescission claim against all defendants is time-barred and is dismissed with prejudice.

Plaintiffs allege a claim under RICO, 18 U.S.C. § 1962, against all Defendants. The facts alleged, however, relate only to Freedom. Additionally, considering the complaint as a whole and looking beyond Plaintiffs' RICO-specific allegations, the conduct alleged by the other Defendants—servicing loans, assigning loans, and foreclosing on a loan—are not predicate acts that constitute the federal crimes of wire fraud, mail fraud, bank fraud, or extortion under the circumstances of this case. *See Dost v. Nw. Tr. Servs., Inc.*, 2011 WL 6794028, at *11-13 (D. Or. Dec. 21, 2011) (describing each crime and how businesses engaged in loan servicing and foreclosure activities are not engaged in RICO predicate acts). This claim is dismissed with prejudice against all Defendants except Freedom. The claim against Freedom is discussed below.

Plaintiffs allege a claim for violations of the FDCPA against all Defendants. The Supreme Court has clarified that persons who engage in actions relating to nonjudicial foreclosure do not qualify as debt collectors under the FDCPA, except for § 1692f(6), the provision that relates to conducting a nonjudicial foreclosure without proper authority. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019) (noting that "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the

meaning of the [FDCPA]."); *see also Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 970 (9th

Cir. 2017) (explaining that "while the FDCPA regulates security interest enforcement activity, it

does so *only* through Section 1692f(6)," and that "[a]s for the remaining FDCPA provisions,

'debt collection' refers only to the collection of a money debt" (emphasis in original)). The

Supreme Court has also held that originating lenders who collect a debt owed to themselves and

those who purchase a loan and collect debt owed on that loan are not debt collectors under the

FDCPA. *See, e.g.*, *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017)

(noting that "those who seek only to collect for themselves loans they originated generally do

not" qualify as debt collectors and finding that even those who purchase loans from another and

then collect on their own behalf do not qualify as debt collectors under the FDCPA); *Schlegel v.*

*Wells Fargo Bank, NA*, 720 F.3d 1204, 1208-09 (9th Cir. 2013) (same). Thus, Plaintiffs' FDCPA

claim is dismissed with prejudice against all Defendants except Rushmore, Clear Recon, and

U.S. Bank Trust. The Court discusses below whether Plaintiffs plausibly state a claim under

§ 1692f(6) against any of these entities. Plaintiffs' claims under Oregon's UDCPA are similarly

dismissed. *See* Or. Rev. Stat. § 646.643 (establishing that a "debt collector who is . . . in

compliance with the requirements of the [FDCPA] shall also be considered to be in compliance

with the requirements of ORS 646.639").

## B. Defendant MERS

Plaintiffs do not plausibly state a claim against MERS. MERS was not listed as a

beneficiary on any Trust Deed or assignment in this case. The only mention of MERS is in the

Deed of Reconveyance, when the recitation of the terms of the 2002 Trust Deed erroneously

stated that MERS was listed as the beneficiary of the 2002 Trust Deed. Plaintiffs allege based on

that scrivener's error that someone must have assigned the beneficial interest of the 2002 Trust

Deed to MERS sometime between 2002 and 2004 and that is why MERS is listed in the Deed of

Reconveyance as the beneficiary of the 2002 Trust Deed. The Deed of Reconveyance, however, is purporting to recite the terms of the 2002 Trust Deed, as expressly referenced by its recorded date and number in the Multnomah County records, and that document lists Freedom as the beneficiary. The Deed of Reconveyance states:

> The undersigned, as successor Trustee under a Trust Deed dated 05/03/02, executed by JULIE ANN METCALF KINNEY, WILLIAM KINNEY JR as Trustor, in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC is named as Beneficiary, and MILLARD S RUBENSTEIN as Trustee, Recorded on 06/17/02 as Instrument # 2002-106872 in Multnomah County, State of Oregon, State of Oregon [sic], pursuant to a written request of the Beneficiary thereunder, does hereby reconvey, without warranty, to the person or persons entitled thereunto, the trust property now held by him as successor Trustee under said Trust Deed, which Trust Deed covers real property situated in Multnomah County, State of Oregon.

ECF 146-2 at 24.

There is simply no plausible interpretation of the documents attached to the Amended Complaint that show that at any time MERS was a beneficiary of the 2002 Trust Deed. The documents also show that MERS has no connection to the 2004 Trust Deed. Thus, all claims against MERS are dismissed with prejudice, because amendment would be futile.[6]

## C. Defendant Rain City

Plaintiffs allege no factual allegations against Rain City. Rain City is only mentioned in the documents attached to Plaintiffs' Amended Complaint. Rain City was not involved in the 2002 Trust Deed, 2004 Trust Deed, or allegedly defective assignments of the Trust Deeds. Rain City's sole involvement was to provide short-term financing to UHD for its purchase of the

---

[6] Even if MERS had been improperly assigned as beneficiary of the 2002 Trust Deed, a review of the merits of the claims against MERS shows that Plaintiffs have not and could not state a claim against MERS.

Property at foreclosure. Rain City thus held a security interest in the Property after UHD purchased it, which was extinguished shortly after the sale when UHD paid Rain City and Rain City released its interest in the Property. Plaintiffs' claims against Rain City are therefore dismissed. Because amendment would be futile, they are dismissed with prejudice.

## D. Defendants HSBC Entities

Plaintiffs name as defendants HSBC Holdings PLC ("HSBC Holdings"), HSBC Finance Corporation ("HFC"), HSBC Home Equity Loan Corporation I ("HELC"), Beneficial, and BF1 (collectively, "HSBC Entities"). Beneficial was the initial lender on Plaintiffs' 2004 loan and initial beneficiary of the 2004 Trust Deed. BF1 is identified in the documents as Beneficial's successor through merger.

Plaintiffs appear to treat all of the HSBC Entities as agents of one another or connected to one another for liability purposes. Plaintiffs allege no facts explaining how these entities could be liable for one another. The mere fact that they may have some corporate relationship (such as parent/subsidiary or sibling companies) is an insufficient basis on which to confer liability on one for the conduct of another. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law . . . that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary."); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) ('To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and

(2) that failure to disregard [their separate identities] would result in fraud or injustice.'" (alterations in original) (quoting *Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996))).

Plaintiffs allege no facts relating to HFC, HELC, or HSBC Holdings. Plaintiffs allege only the conclusory assertion that Beneficial and HSBC Holdings are "one and the same."[7] Plaintiffs also attach a billing statement from Beneficial that contains a notation that Beneficial is a member of "HSBC Group." This notation, however, does not support that HSBC Holdings and Beneficial, or Beneficial and any other of the HSBC Entities, have the requisite singular identity and unity of interest. *See LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc.*, 2008 WL 7281926, at *5 (E.D. Va. Mar. 11, 2008); *Ameritec Corp. v. Ameritech Corp.*, 1986 WL 10702, at *3-4 (C.D. Cal. Apr. 29, 1986). Because Plaintiffs do not allege any acts by HFC, HELC, or HSBC, or facts supporting that these entities are alter egos or otherwise jointly liable for any alleged conduct of Beneficial or BF1, claims against these entities are dismissed. Because Plaintiffs have already amended their complaint and because the Court finds amendment would be futile, the Court dismisses these claims with prejudice. The Court therefore does not reach these entities' arguments regarding personal jurisdiction.[8]

---

[7] Plaintiffs also allege that "that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture." The Court does not accept this allegation as true, because it is conclusory, does not contain any substantiating facts, and contains legal conclusions.

[8] Because the Court does not reach the HSBC Entities' arguments regarding service and personal jurisdiction, the Court does not consider the documents that are the subject of the HSBC Entities' Request for Judicial Notice. That request, therefore, is denied as moot.

Regarding Beneficial and BF1, they first move to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure, arguing that they were not properly served. The Federal Rules of Civil Procedure accept state law service of process on corporations. Oregon's primary method of service on a corporation is personal or office service. Or. R. Civ. P. 7D(3)(b)(i). When a registered agent of a corporation is not located in the county where the lawsuit is filed, however, Oregon law permits service by mail to the registered agent or last registered office, or if the corporation is not registered in the state of Oregon, then to the principal office or place of business of the corporation, or "in any case, to any address the use of which the plaintiff knows or has reason to believe is most likely to result in actual notice." *Id.* 7D(3)(b)(ii)(C). Service by mail is effectuated by sending documents "by first class mail and by any of the following: certified, registered, or express mail with return receipt requested." *Id.* 7D(2)(d)(i).

The record does not contain any proof of service of the original complaint and summons on Beneficial (BF1 was not named in the original complaint). On December 6, 2018, Pilar C. French of Lane Powell, PC, in Portland, Oregon, filed a notice of appearance on behalf of HSBC Holdings and Beneficial and identified herself as attorney of record. Beneficial preserved its defenses, including sufficiency of process. On June 21, 2019, Plaintiffs filed a certificate of service of the Amended Complaint and Summons on Beneficial and BF1 dated April 3, 2019. Plaintiffs purport to have served the Summons and Amended Complaint on Beneficial and BF1 by electronic service to Pilar French. This is insufficient service of process. Plaintiffs have filed a motion requesting leave to cure any defects in service of process. Beneficial and BF1 responded that they do not object to an extension of time for Plaintiffs to effectuate proper service, although they note that they contend that the statute of limitations bars claims against them, citing to their

motion to dismiss. The HSBC Entities, however, did not raise the statute of limitations in their motion to dismiss.

The Court finds that Plaintiffs have failed to satisfy their burden of establishing sufficient service of process on Beneficial and BF1. The Court must therefore decide whether to grant an extension for service or dismiss the action. *See In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001) (stating that courts have broad discretion to extend time or dismiss under Rule 4(m) of the Federal Rules of Civil Procedure). In making this determination, courts look to whether a plaintiff has provided "good cause" for the failure to effect service. *See* Fed. R. Civ. P. 4(m); *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987). At a minimum, "good cause" means excusable neglect. *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). A court may also look at whether "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). Before allowing additional time for service, the Court considers whether Plaintiffs state a claim (or could state a claim) against Beneficial and BF1. If Plaintiffs cannot state a claim against Beneficial or BF1, then granting an extension of time for service of process would be pointless.

BF1 argues that there are no factual allegations relating to it in the Amended Complaint. Plaintiffs, however, allege that in December 2016 Beneficial did not properly assign its interest in the 2004 Trust Deed to MTGLQ. Plaintiffs allege that the signature on the purported assignment by MTGLQ, the assignee, as "attorney-in-fact" for Beneficial, the assignor, shows that the assignment was not properly authorized by the assignor. Plaintiffs allege that this

improper assignment renders void the chain of title leading to the foreclosure. That disputed assignment involved BF1, as successor to Beneficial through merger.

Plaintiffs' allegation that the assignment to MTGLQ is void is solely based on the fact that the assignment from BF1 to MTGLQ was not signed by a BF1 or Beneficial employee but was instead assigned by an "attorney-in-fact" for BF1. The "attorney-in-fact" was MTGLQ, through a Vice President of MTGLQ. Plaintiffs do not expressly allege that MTGLQ did not have actual authority as BF1's attorney-in-fact, although construing Plaintiffs' complaint liberally they may be implying that MTGLQ did not have the requisite authority. The mere fact, however, that MTGLQ signed as an attorney-in-fact, is an insufficient basis to presume that MTGLQ lacked the requisite authority. Such signatures are not uncommon in real property transactions. Indeed, it is common enough that the California legislature has established a requirement that "[w] hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Cal. Civ. Code § 1095. Furthermore, Oregon has adopted the UCC's provision that signatures in negotiable instruments are "presumed to be authentic and authorized" unless shown otherwise (or under other circumstances not present here). Or. Rev. Stat. § 73.0308.

The "speculative nature" of Plaintiffs' allegation that the assignment to MTGLQ is without authority or not genuine is further demonstrated by the fact that BF1 (as Beneficial's successor) did not demand the payments from the Kinneys after the disputed assignment to MTGLQ, and particularly after the Kinneys defaulted on the loan. *See Dufresne v. JP Morgan Chase Bank, NA*, 2019 WL 4318544, at *7-8 (E.D. Cal. Sept. 12, 2019) (discussing the "speculative nature" of allegations of the opposite, but related, nature—that the beneficiary and holder of the note had assigned the interest—because the purported new beneficiary and owner

of the note had not "surfaced and demanded payment when [the plaintiff] defaulted" on the loan, which is "convincing" evidence that no such owner exists) (collecting cases). Had BF1 had not assigned its interest to MTGLQ, then BF1 would have expected to continue to receive the payments from Plaintiffs. When Plaintiffs defaulted and stopped paying monthly payments, BF1 would have demanded payments instead of the successors to MTGLQ.

Viewing the Amended Complaint and its attachments as a whole, Plaintiffs provide no plausible basis for alleging that MTGLQ lacked authority as the attorney-in-fact for BF1. To the extent Plaintiffs could allege this on information and belief, such an allegation would be "speculative and not tethered to any factual support" and thus does not preclude dismissal. *Dufresne v. JP Morgan Chase Bank, NA*, 2019 WL 4318544, at *8 (E.D. Cal. Sept. 12, 2019) (citing *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009)). Accordingly, under the circumstances of this case, Plaintiffs do not plausibly allege that MTGLQ lacked authority to sign as attorney-in-fact for BFI. Thus, Plaintiffs' claims arising out of the allegation that the chain of title was void because of an invalid assignment from BF1 to MTGLQ fail.

Plaintiffs also assume something nefarious from the fact that the Note was indorsed in blank through an Allonge. Such indorsements, however, are allowed under Oregon law. *See* Or. Rev. Stat. § 73.0204(1); *see also id.* cmt. 1 ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."); *Gard v. Ocwen Loan Servicing LLC*, 2019 WL 3718972, at *7 (D. Ariz. Aug. 7, 2019) ("And so long as it is affixed to the note, indorsement may be made via allonge." (citing Arizona's statute, which is the same as Oregon's).

The Court also notes that BF1 and Beneficial were not involved in the foreclosure and do not purport to have any interest in the Property. The Deed of Trust also was assigned two more

times after BF1's assignment to MTGLQ. Plaintiffs' requests for information relating to the foreclosure and the status of the loan, Plaintiffs' purported rescission, and the nonjudicial foreclosure all involved defendants other than Beneficial and BF1. Thus, Plaintiffs claims for abuse of vulnerable person, lack of standing to foreclose, quiet title, and slander of title are dismissed against Beneficial and BF1, with prejudice.

Plaintiffs also fail to allege a breach of contract claim against Beneficial. Plaintiffs allege that Beneficial breached its contract with Plaintiffs because when Beneficial assigned the Note and Deed of Trust to MTGLQ, Beneficial received monies and thus under Paragraph 23 of the Deed of Trust was required to reconvey Beneficial's interest to Plaintiffs. First, the Deed of Trust containing Paragraph 23 cited by Plaintiffs is the 2002 Deed of Trust between Plaintiffs and Freedom, not the 2004 Deed of Trust between Plaintiffs and Beneficial. The 2004 Deed of Trust, however, contains a substantially similar paragraph at Paragraph 20, which states, in relevant part: "Upon payment of all sums secured by this Deed of Trust, and if Lender is not committed to make any future refinancings or future advances, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee." ECF 146-2 at 22. The "sums secured by this Deed of Trust" are described elsewhere in the document, including on the first page where it describes that "Borrower is indebted to Lender in the principal sum of $126. 624. 92," and to "secure" the payment of that principal amount plus interest and other sums that may be advanced, the trust was created in the Property and granted to Lender. Plaintiffs do not allege that they paid to Beneficial all sums secured by the Deed of Trust. It is the *Borrower's* indebtedness and the *Borrower's* repayment of the full amount under the Deed of Trust that triggers the reconveyance obligation under Paragraph 20. Whether Beneficial assigned Plaintiffs' Note and Deed of Trust

to someone else and received consideration for that transfer is irrelevant to whether the terms of Paragraph 20 of the Deed of Trust were met and triggered Beneficial's obligation to reconvey the Property. Thus, Plaintiffs do not state a claim for breach of contract and amendment would be futile.

Plaintiffs' Fourteenth Claim for Relief, a "fraudulent misrepresentation" claim, is unclear and fails under Rule 9(b) of the Federal Rules of Civil Procedure, which requires pleading with greater specificity. "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged . . . ." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks omitted). This claim alleges that "Defendants" falsely represented that they are proper financial institutions authorized to do business, but the Amended Complaint does not plausibly allege that any Defendant is not properly authorized to engage in financial, business, or mortgage-related transactions generally. This claim also alleges that the "real" party in interest was not disclosed to Plaintiffs, that at the time of the foreclosure the "true beneficiary" was not disclosed to Plaintiffs, and that Plaintiffs could not negotiate with the "true beneficiary" to "save" their property. These allegations fail under Rule 9(b). It appears, however, that Plaintiffs are referencing MERS as the "real" party in interest and the "true" beneficiary to one or both Trust Deeds, and to that extent this claim is dismissed with prejudice because MERS was not a beneficiary of any Trust Deed. The allegations relating to disclosures or lack thereof at the time of foreclosure do not support a claim against Beneficial, because Beneficial was not involved with the foreclosure. This claim also references generic fees, rebates, refunds, kickbacks, and profits as not being disclosed to Plaintiffs, but this allegation fails under Rule 9(b). No other misrepresentations are alleged and thus this claim fails against Beneficial (it is not asserted against BF1).

Much of Plaintiffs' unjust enrichment claim is on behalf of others—alleging general conduct by Beneficial and Freedom, such as that they file unlawful lawsuits to collect money and that they obtain higher interest rates, fees, rebates, kickbacks, profits and payments of insurance, gains, and other fees. Plaintiffs may only file suit for conduct that affected them personally and for damages they personally suffered. For their unjust enrichment claim, Plaintiffs allege that Freedom securitized Plaintiffs' mortgage and then retained the benefit of Plaintiffs' payments and such retention of benefits was unjust. These allegations are unrelated to Beneficial and thus Plaintiffs fail to state an unjust enrichment claim against Beneficial.

Plaintiffs' "fraud in the concealment" claim is alleged against all Defendants but is based on an allegation that "Defendants" failed to disclose that "the loans were securitized." Plaintiffs do not plausibly allege that Beneficial securitized Plaintiffs' loan before assigning it to MTGLQ. Moreover, securitization is not illegal and courts in this District have repeatedly rejected the argument that a loan is unenforceable because a loan has been securitized. *See, e.g.*, *Horner v. Plaza Home Mortg., Inc.*, 2016 WL 3574551, at *4 (D. Or. July 1, 2016); *Chruszch v. Bayview Loan Servicing, LLC*, 2015 WL 6756130, at *3 (D. Or. Nov. 4, 2015); *Oliver v. Delta Fin. Liquidating Trust*, 2012 WL 3704954, at *4 (D. Or. Aug. 27, 2012). Accordingly, this claim is dismissed.

Plaintiffs' "fraud in the inducement" claim is alleged against all Defendants but is based on an allegation that "Defendants" misrepresented that they were entitled to exercise the power of sale of the Trust Deed when they were not, misrepresented that they were the beneficiary of the Trust Deed when they were not, were collecting on a debt to which they had no interest, and foreclosed on a property on which they had no authority. The documents attached to the Amended Complaint, however, show that Beneficial, and BF1 as Beneficial's successor, was the

initial 2004 lender, owner of the Note, and beneficiary of the 2004 Trust Deed. Beneficial had the authority to collect on the debt during the time Beneficial received payment from Plaintiffs. Beneficial did not foreclose on the Property. Thus, Plaintiffs do not plausibly allege this claim against Beneficial or BF1.

Plaintiffs' "unconscionable contract," intentional and negligent infliction of emotional distress, and RICO claims do not allege any facts against Beneficial or BF1. They only allege facts relating to Freedom. Freedom's loan is a different loan than Beneficial's loan. Thus, these claims are dismissed against Beneficial.

The Court has reviewed all claims alleged against Beneficial and BF1, and has reviewed the Amended Complaint as a whole to consider whether it states a claim against Beneficial or BF1. Plaintiffs fail to state a claim against these Defendants. Considering the allegations in the Amended Complaint, the documents attached to the Amended Complaint, the fact that Plaintiffs were given months to amend their complaint after numerous motions to dismiss were filed, including a motion to dismiss by Beneficial, the Court finds that further amendment would be futile, and all claims are dismissed with prejudice. Accordingly, allowing Plaintiffs to cure the defects in service would be futile.

**E.  Defendant Goldman Sachs Group, Inc.**

Defendant Goldman Sachs Group, Inc. ("Goldman") moves to dismiss based on lack of personal jurisdiction and failure to state a claim. Goldman's only alleged connection to this case is as the "owner" of MTGLQ. As discussed above, the mere fact that one company is the parent of another company is insufficient to hold the parent company liable for conduct by the subsidiary. Thus, Plaintiffs fail to state a claim against Goldman.

Moreover, Plaintiffs fail to allege any connection between Goldman and Oregon such as to convey personal jurisdiction. Due process requires that the defendant "have certain minimum

contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).

The Ninth Circuit applies a three-part test to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1)     The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)     the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802).

Goldman is a Delaware corporation headquartered in New York. It does not make or service residential mortgages in Oregon (or elsewhere). It does not have an office or personnel in Oregon. It is not alleged to have negotiated any relevant contracts or performed any relevant acts

in Oregon. It is not alleged to have taken any action whatsoever with respect to Plaintiffs or the Property. Accordingly, the Court does not have general or specific personal jurisdiction over Goldman in this matter. Plaintiffs' claims are dismissed with prejudice.

## F. Defendant State of Oregon

The State of Oregon moves to dismiss all claims against it for failure to state a claim, improper service, protections of the Tenth and Eleventh Amendments to the U.S. Constitution, and failure to comply with Oregon's Tort Claims Act. Because the Court finds that Plaintiffs fail to state a claim against the State and amendment would be futile, the Court does not reach the State's other arguments.

Plaintiffs' only factual allegations relating to the State of Oregon involve mentions regarding Plaintiffs' son's incarceration and the attached paperwork relating to the State's Foreclosure Avoidance Program. Plaintiffs' son's incarceration is irrelevant to the loans and foreclosure proceedings at issue, other than as a possible explanation for Plaintiffs' financial predicament. It does not give rise to any claim against the State under the circumstances alleged.

There is some paperwork relating to the State's Foreclosure Avoidance Program attached to the Amended Complaint. These exhibits, however, do not plausibly support a claim against the State. In responding to the Motions to Dismiss, Plaintiffs' only reference to the State of Oregon is the comment that: "In April 2018 Defendant CRC [Clear Recon] sought a certificate of compliance from the State of Oregon Foreclosure Avoidance Program wherein Defendant State of Oregon falsely represented Defendant USBNA as beneficiary and Defendant RLMS as Lender in the 2004 DOT." As an initial matter, the form listed the beneficiary, but not the lender.

On the form, the program coordinator listed the beneficiary contained in the most recent assignment recorded in the County records. The import of the Foreclosure Avoidance form, however, was not who was the beneficiary, but that Plaintiffs did not pay the required fee and

thus the program was not moving forward. The State did not "certify" the validity of the

nonjudicial foreclosure process, the beneficiary, or the lender. The State only certified the fact

that Plaintiffs did not pay the required fee. *See* ECF 146-2 at 56 (showing that the only fact under

"The Service Provider hereby certifies that:" is "The grantor did not pay the required fee by the

deadline"). Plaintiffs do not allege that they paid the fee. Nor do Plaintiffs allege any harm arose

from the fact that U.S. Bank Trust was listed as the beneficiary in the general loan information

part of the Foreclosure Avoidance Program form. Plaintiffs do not allege that they relied on what

was listed on this form to their detriment, and, indeed, Plaintiffs wrote VOID on the form and

sent it to the Foreclosure Avoidance Program and Rushmore. Plaintiffs also queried at the time

of foreclosure whether U.S. Bank Trust had appropriate documentation demonstrating its interest

in the Property. *See, e.g.*, ECF 146-2 at 36-40.

Additionally, merely identifying the wrong beneficiary, even on the Notice of Trustee's

Sale itself, is not fatal to a nonjudicial foreclosure. As explained by United States Magistrate

Judge Stacie F. Beckerman:

> In *Streater v. Fed. Nat'l Mortg. Ass'n*, 224 F. Supp. 3d 1113 (D.
> Or. 2016), the plaintiff alleged that the defendants violated the
> OTDA because the notice of sale identified the wrong beneficiary.
> *Id.* at 1116. The court held that Oregon law "preclude[d]" the
> "plaintiff from challenging the trustee's sale based on the alleged
> misidentification of the beneficiary in the Notice of Sale." *Id.* In
> support of this holding, the court noted that the Oregon Court of
> Appeals "held that a plaintiff who receives notice of a trustee sale
> 'cannot bring a post-sale challenge based on her assertion that the
> trustee's notice of sale does not correctly identify the beneficiary.'
> " *Id.* (quoting *DiGregorio v. Bayview Loan Serv., LLC*, 281 Or.
> App. 484, 489 (Or. Ct. App. 2016) ). The court added that a
> "plaintiff must assert a 'fundamental' flaw in the trustee sale, such
> as lack of notice or the absence of a validly appointed trustee, to
> assert a post-sale challenge." *Id.*; *See also Woods v. U.S. Bank*,
> N.A., 831 F.3d 1159, 1166 (9th Cir. 2016) ("Technical defects that
> do not have a substantial impact on grantors' rights—as in this
> case, where the trustee's sale notice lists the wrong beneficiary—

are not significant enough to warrant upsetting the finality of a trustee's sale. In contrast, violations of subsections that grant substantive rights—such as the right to personal service and advance notice—can support post-sale challenges.") (footnote omitted).

In this case, Mencl acknowledges in her complaint that she received notice of the impending sale. (*See* Compl. 6, 12, indicating that Mencl signed her complaint on January 22, 2018, and alleging that pursuant to the Notice of Sale, her home was "scheduled for sale on January 23, 2018"). Mencl's complaint also makes clear that her "claim for relief" is based on the fact that the Notice of Sale allegedly identified the wrong beneficiary (*i.e.*, U.S. Bank instead of Nationstar). (*See* Compl. at 8-11, indicating that Mencl's "claim for relief" is based on the fact that Notice of Sale is "invalid on its face" since it lists U.S. Bank as the beneficiary instead of Nationstar, and alleging that Nationstar was the true beneficiary of the Trust Deed) (all caps omitted). Under these circumstances, Mencl cannot sustain a claim based on her allegation that the Notice of Sale did not correctly identify the beneficiary. *see Streater*, 224 F. Supp. 3d at 1117 (holding that *DiGregorio* "preclude[d]" the plaintiff's claim that the defendant violated the OTDA by failing to identify the "true beneficiary" in the notice of sale).

*Mencl v. U.S. Bank Nat'l Ass'n as Tr. for Specialty Underwriting & Residential Fin. Tr. Mortg. Loan Asset-Backed Certificates, Series 2006-AB2*, 2018 WL 4945212, at *4 (D. Or. July 10, 2018), *report and recommendation adopted*, 2018 WL 4945211 (D. Or. Aug. 15, 2018). Here, Plaintiffs' allegations relating to the State of Oregon involve only that the State of Oregon purportedly misidentified the beneficiary at some point during the foreclosure proceedings (and not even on the Trustee's Notice of Sale, but on a less important document).

Finally, as discussed throughout this Opinion, the State did not misidentify the beneficiary. Plaintiffs' allegations regarding the defect in assignments and chain of title are contradicted by the documents attached to the Amended Complaint. Accordingly, Plaintiffs' claims against the State of Oregon are dismissed.

### G. Defendant MTGLQ

The claims remaining against MTGLQ that have not already been discussed in this Opinion are: quiet title, abuse of a vulnerable person, fraudulent misrepresentation, lack of standing to foreclose, unjust enrichment, fraud in the concealment and in the inducement, unconscionable contract, and intentional and negligent infliction of emotional distress. MTGLQ, however, was not involved with Plaintiffs' foreclosure. MTGLQ assigned its interest in the Property and does not purport to claim any interest in the Property. Plaintiffs' requests for information relating to the foreclosure and the status of the loan, Plaintiffs' purported rescission, and the nonjudicial foreclosure all involved defendants other than MTGLQ. Thus, Plaintiffs' claims for abuse of vulnerable person, lack of standing to foreclose, and quiet title are dismissed against MTGLQ, with prejudice.

For the same reasons the Court dismissed Plaintiffs' unjust enrichment, "unconscionable contract," and intentional and negligent infliction of emotional distress claims against the HSBC Entities, the Court dismisses these claims against MTGLQ. Plaintiffs do not allege any facts relating to MTGLQ with respect to these claims.

For the same reasons the Court dismissed Plaintiffs' fraudulent misrepresentation and fraud in the concealment claims against the HSBC Entities, those claims are dismissed against MTGLQ. Regarding the latter, Plaintiffs do not allege that MTGLQ securitized Plaintiffs' loan between the time it purportedly was assigned to MTGLQ and MTGLQ assigned the loan to the first U.S. Bank Trust entity, nor is securitization itself illegal. Regarding the former, MTGLQ was not involved in the foreclosure and thus alleged misrepresentations relating to the foreclosure are irrelevant, and no other misrepresentation is alleged, let alone with the specificity required by Rule 9(b).

Regarding fraud in the inducement, liberally construing Plaintiffs' claims, they allege that MTGLQ was not properly assigned the loan and the benefits of the Trust Deed and thus was not the beneficiary when it represented that it was and was not entitled to collect Plaintiffs' mortgage payments when MTGLQ collected the payments. As discussed above, Plaintiffs do not plausibly allege that the assignment to MTGLQ was unauthorized or otherwise void. Accordingly, this claim is dismissed.

## H. Defendants Ozeruga, Passanante, and Slominski

Ozeruga's only alleged involvement in this case is: (1) that he is affiliated with UHD, who purchased the Property at foreclosure on October 23, 2018; (2) on November 14, 2018, Mr. Nietzche allegedly spoke with Ozeruga and told him about this pending federal lawsuit; and (3) on November 29, 2019, Ozeruga is alleged to have "instigated" an "inferior" action in state court relating to the Property (the FED action). Defendant Passanante's involvement is that he is the attorney representing UHD in the state court FED action. Defendant Slominski's involvement is that he is the attorney representing UHD in this federal lawsuit.

Regarding Plaintiffs' quiet title claim, Plaintiffs do not allege that Ozeruga personally has any interest in the Property. Plaintiffs allege that UHD purchased the Property at the nonjudicial foreclosure. Plaintiffs do not allege that attorneys Passanante and Slominski have any interest in the Property Thus, this claim is dismissed against Ozeruga, Passanante, and Slominski.

Because Ozeruga, Passanante, and Slominski were not involved in conducting the nonjudicial foreclosure or in any of the loans or assignments, Plaintiffs' abuse of a vulnerable person, slander of title, intentional and negligent infliction of emotional distress, and fraud in the inducement and in the concealment claims are dismissed against these Defendants.

Plaintiffs' unjust enrichment claim is unrelated to Ozeruga, Passanante, or Slominski—it focuses on the alleged improper fees and other items obtained by the lenders and the improper

enrichment of Freedom after it allegedly securitized Plaintiffs' loan. This claim is dismissed against Ozeruga, Passanante, and Slominski.

Plaintiffs' remaining claims against these Defendants are Fifth Amendment due process, abuse of process, fraud, and civil conspiracy. All of these claims are based on the same facts— that Plaintiffs filed this action in federal court and then UHD, through Ozeruga and the attorneys, filed the state court FED action to evict the Kinneys from the Property. Plaintiffs allege that by filing the "inferior" state court action with knowledge that this federal court case was pending, Ozeruga, Passanante, and Slominski violated Plaintiffs' constitutional rights, engaged in a civil conspiracy, abused the legal process, and perpetrated a fraud on the court by using an inferior state court process.

The Fifth Amendment due process clause only restrains conduct by the federal government, not private actors. *Geneva Towers Tenants Org. v. Federated Mortg. Inv'rs*, 504 F.2d 483, 487 (9th Cir.1974) ("The Due Process Clause of the Fifth Amendment applies to and restricts only the federal government and not private persons."). Due process protections applicable to state and local governments through the Fourteenth Amendment restrain conduct by state actors, not private actors. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (noting that "nothing in the language of the Due Process Clause . . . requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"). Plaintiffs do not allege, nor could they plausibly allege, that Ozeruga, Passanante, or Slominski are state actors. Accordingly, Plaintiffs' due process claims are dismissed with prejudice.

"Abuse of process is 'the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause.'" *Singh v.*

*McLaughlin*, 255 Or. App. 340, 355 (2013) (quoting *Larsen v. Credit Bureau*, 279 Or. 405, 408 (1977)). "Thus, to prevail on an abuse of process claim, a plaintiff must prove some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Id.* Plaintiffs allege that Ozeruga, Passanante, and Slominski filed the FED action to evict the Kinneys from their home. That, however, is the purpose of a FED action. Plaintiffs do not allege an ulterior purpose unrelated to the process of the FED action. Plaintiffs appear to believe generally that because they filed a federal action that no FED action could be filed, or that their federal action was a defense to the FED action. Those arguments could, however, be raised in the FED action. Indeed, Plaintiffs filed a motion in state court to stay the FED action on the grounds that this federal case was pending. The fact that this federal case was pending does not make the filing of the FED action an abuse of process. This claim is dismissed.

Plaintiffs' fraud claim with respect to these Defendants is based on a general allegation that as agents acting on behalf of UHD, they "attempted to defraud plaintiffs from their estate using an inferior state court process," which "constitutes a gross fraud on the court of record." This fails to allege fraud under Rule 9(b)—there is no specific allegation of the who, what, where, and when of a misrepresentation or reliance on the misrepresentation to the detriment of Plaintiffs. Additionally, because the Court has found that filing the FED action was not an abuse of process, it was not "gross fraud on the court of record." This claim is dismissed against these Defendants.

Under Oregon law, "civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather, it is a 'way[ ] in which a person may become jointly liable for another's tortious conduct." *Morasch v. Hood*, 232 Or. App. 392, 402 (2009) (alteration in original)

(quoting *Granewich v. Harding*, 329 Or. 47, 53 (1999)). Because there is no tortious conduct plausibly alleged by any of these three Defendants, their alleged civil conspiracy fails.

## I. Defendant Freedom

Freedom was not involved in the nonjudicial foreclosure proceedings, the 2004 Trust Deed or its assignments, or any of the communications relating to the nonjudicial foreclosure or demands for payment. Freedom had nothing to do with Plaintiffs' Property or mortgage after the Deed of Reconveyance conveyed Freedom's interest in the Property back to the Kinneys in 2004. Thus, Plaintiffs' claims for quiet title, abuse of a vulnerable person, and slander of title are dismissed against Freedom.

The general basis of Plaintiffs' RICO, various fraud, unconscionable contract, intentional and negligent infliction of emotional distress, unjust enrichment claims against Freedom is that Freedom securitized Plaintiffs' loan after Plaintiffs entered into the transaction with Freedom, and this was somehow improper.[9] Assuming Plaintiffs' allegations are true and Freedom did securitize Plaintiffs' loan, Plaintiffs were on notice that Freedom could sell or assign Plaintiffs' loan. As discussed above, securitization is not unlawful and does not render a loan unenforceable or uncollectable. *See, e.g.*, *Horner*, 2016 WL 3574551, at *4; *Chruszch*, 2015 WL 6756130, at *3; *Oliver*, 2012 WL 3704954, at *4. Plaintiffs do not plausibly allege that Freedom's securitization was tortious or that Freedom's acceptance of payments by Plaintiffs for two years

---

[9] Plaintiffs also allege that the 2002 Trust Deed is somehow still "active" and that Freedom's loan is somehow still in effect in some manner, but those allegations are not plausible and are belied by the documents attached to the Amended Complaint. Plaintiffs refinanced with Beneficial and paid off their loan with Freedom, and Freedom's interest was extinguished with the Deed of Reconveyance.

was tortious.[10] Plaintiffs allege no factual basis for assuming that Freedom was not authorized to accept payments after the purported securitization.

Plaintiffs do not allege facts plausibly showing that Freedom sold or assigned (securitized) Plaintiffs' loan when Freedom did not own Plaintiffs' loan (as Plaintiffs allege). The documents show that Freedom was the original lender and beneficiary of Plaintiffs' 2002 loan and Deed of Trust. If Freedom sold or assigned the loan after it was originated, Freedom had the authority to do so.

Plaintiffs also do not plausibly allege a breach of contract by Freedom. Plaintiffs allege that Freedom breached the clause of the Deed of Trust requiring that a Deed of Reconveyance be completed if the loan was paid, but the Court does not accept this allegation as true because it is contradicted by the documents attached to the Amended Complaint. Freedom completed a Deed of Reconveyance, as required under the Trust Deed. Accordingly, all claims against Freedom are dismissed.

## J. Non-moving Defendants

In the interest of judicial efficiency, the Court *sua sponte* considers whether Plaintiffs state a claim against the non-moving defendants, whether they have appeared in this case or not.[11] A trial court may *sua sponte* dismiss claims under Federal Rule of Civil

---

[10] Because Freedom's loan was paid off after two years and Freedom's interest in the Property was extinguished, at most Plaintiffs could challenge Freedom's authority during the two years it collected payments from Plaintiffs.

[11] The Court notes that although U.S. Bank Trust, Rushmore, and UHD all filed answers in this case, those answers specifically asserted as an affirmative defense that Plaintiffs fail to state a claim against those defendants.

The Court further notes that an affidavit of service has been filed stating that defendant "United States Corporation Company" has been served in this case by mailing a copy of the Amended Complaint and Summons to U.S. Attorney General William Barr via certified mail, return receipt requested. No copy of the certified mailing or return receipt was attached to the

Procedure 12(b)(6), even shortly before trial. *See, e.g., Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Moreover, the claims against the nonmoving parties are integrally related to the claims against the moving parties and thus the Court may, on its own motion, dismiss this case as to the nonmoving defendants. *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (noting that a trial court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related").

1. **U.S. Bank Trust, Clear Recon, and Rushmore**

   a. **Specific Performance**

Plaintiffs allege their specific performance claim against Clear Recon and U.S. Bank Trust. "To prevail [on a claim for specific performance,] a plaintiff must show that it has a valid, legally enforceable contract and that it is ready, willing and able to perform its obligations under the contract." *Riverside Homes, Inc. v. Murray*, 230 Or. App. 292, 301 (2009) (alterations in original) (quoting *View Point Terrace LLC v. McElroy*, 213 Or. App. 281, 285 (2007)). Plaintiffs' specific performance claim is dismissed because they do not allege a valid, enforceable contract. The 2004 Deed of Trust was extinguished in the nonjudicial foreclosure and as discussed above, Plaintiffs fail to allege that the foreclosure violated the OTDA or is otherwise unlawful.

---

affidavit of service. Defendant "United States Corporation Company" has not yet appeared. The Court notes that an affidavit of service has been filed for defendants Barrister Support Services and Clear Recon Corporation, although only purporting to serve the summons and original complaint, and not the Amended Complaint. Barrister Support Services has not yet appeared. On May 8, 2019, Clear Recon Corporation filed a Notice of Appearance. The Court makes no finding regarding the sufficiency of service on any of these Defendants. Regardless of the propriety of service, the Court considers whether Plaintiffs have stated a claim against these Defendants.

### b. Breach of Contract

Plaintiffs allege a breach of contract claim against Rushmore and U.S. Bank Trust, arguing that under the Deed of Trust these Defendants were required to send important notices through certified mail and not regular U.S. mail. The Deed of Trust states, however, that notice also may be provided by delivering the notice to the Property. Plaintiffs allege that "important and time-sensitive documents" were sent to the Kinneys through U.S. Mail in violation of this provision of the Trust Deed. The Trust Deed does not require that all "important" or "time sensitive" documents be delivered or sent certified mail, but only "any notice to Borrower provided for in this Deed of Trust." The Deed of Trust requires notice to the Borrower before the Lender can take certain actions if the Borrower fails to perform its obligations as set forth in the Deed of Trust (paragraph 7), before the Lender can enter onto and inspect the property (paragraph 8), if the Lender does not agree to the Borrower selling or transferring the property (paragraph 16), and if the Lender declares a breach or pursues a Trustee's sale (paragraph 17).

Plaintiffs fail to state a claim because they do not identify what documents that were required under the Trust Deed to have "notice" sent were not delivered or sent through certified mail. Furthermore, the only qualifying actions under the Trust Deed that appear in Plaintiffs' allegations are from the Trust Deed's paragraph 17, communications relating to Plaintiffs' breach and the Trustee's sale. Plaintiffs' allegations and the documents attached to the Amended Complaint, however, show that these documents were posted on the Property on several occasions, and thus they were "delivered" as required under the Deed of Trust.

### c. Promissory Estoppel

Plaintiffs allege a claim for promissory estoppel against all three of these Defendants. Plaintiffs assert that Clear Recon and Rushmore, acting as agents of U.S. Bank Trust, promised to respond to the Kinneys' request for discovery, knew the Kinneys would rely on the fact that

further information would clear up the confusion, the Kinneys relied on the promise, the entities did not intend to keep the promise, and the Kinneys suffered harm as a result. The documents attached to Amended Complaint, contradict this allegation and show that Plaintiffs fail to state a claim for promissory estoppel. The documents attached to the Amended Complaint show that the Clear Recon and Rushmore did provide reasonable discovery to the Kinneys on more than one occasion, including July 24, 2017, August 22, 2018, August 24, 2018. The documents further show that questions that were not responded to and items that were not provided were unreasonable or irrelevant. For example, the Kinneys asked "what is your nationality" and "does the word 'Foreclosure' mean 'Before the closure?'" Failing to respond to these type of questions was not a material breach of any promise to provide reasonable and relevant discovery. Furthermore, to the extent Clear Recon and Rushmore did not provide an "original" of the Note and only provided a copy, the provision of an original is not required, as discussed in Section J(1)(j) below.

Plaintiffs also cannot plausibly allege that they relied on any purported missing discovery to their detriment. Plaintiffs allege that they were confused when their loan servicer was changed from Beneficial to Rushmore in January 2017. Plaintiffs allege that they did not know the proper entity to pay their January mortgage payment, because in December 2016 they had received their usual statement requesting payment to Beneficial and in January 2017 they received the notice that Rushmore was taking over as over February 1, 2017. The documents attached to the Amended Complaint clearly explain the transition between loan servicers and the date payment was to be made to each servicer, but accepting Plaintiffs' allegations that they were confused about the January 2017 payment, the documents provided after that date were sufficient to explain that Rushmore had taken over and Beneficial was no longer the loan servicer. Plaintiffs

do not allege what additional documents Clear Recon or Rushmore could have provided that would have satisfied Plaintiffs and "cleared up" the confusion when Rushmore and Clear Recon provided copies of the Deed of Trust, the Note, the Allonge, the assignments, the welcome letters the payment history, and the other relevant documents. Thus, Plaintiffs' promissory estoppel claims are dismissed.

### d. FDCPA and UDCPA

As discussed above, the only possible claim under the FDCPA is under § 1692f(6), which evaluates whether the foreclosing entities foreclosed without proper authority. Plaintiffs' allegation that they did not have proper authority is based on the assertion that the chain of title is tainted by the improper assignment from BF1 to MTGLQ.[12] As discussed above, Plaintiffs do not plausibly allege that assignment was void and thus they do not plausibly allege that U.S. Bank Trust, Clear Recon, and Rushmore acted without authority in initiating and conducting nonjudicial foreclosure proceedings. Because the FDCPA claim fails, the Oregon's UDCPA claim fails.

### e. Breach of Trustee's Duty

Plaintiffs allege that Clear Recon breached its duties as Trustee by failing to confirm that U.S. Bank Trust was the proper holder of the Note and beneficiary of the Deed of Trust, that the assignments were all recorded, whether the Kinneys actually were in default (because they were not), and by failing to rescind the sale. For all of the reasons discussed herein, these allegations fail to state a claim.

---

[12] Plaintiffs also make references to MERS, but those allegations are without any factual support, are implausible, and are rejected.

### f. Fraud

Plaintiffs allege a fraud claim against Clear Recon and U.S. Bank Trust based on the allegation that Edward Jamir of Clear Recon executed a document purporting to be in Portland, Oregon when on information and belief he was in California. This allegation fails because Plaintiffs do not allege how such a misrepresentation is material. If Mr. Jamir signed the document in California and the document states that he signed it in Portland, his location during signing is not relevant to the nonjudicial foreclosure proceedings, the chain of title of the Note or Deed of Trust, or whether Plaintiffs made their mortgage payments or failed to make their mortgage payments and thus were in default. Accordingly, even if Mr. Jamir made such a misrepresentation, it was not material. Nor do Plaintiffs allege how Mr. Jamir intended the Kinneys rely on the fact that he signed the documents while in Oregon versus while in California or that the Kinneys actually relied to their detriment on his representation that he signed the document while in Oregon versus while in California. Plaintiffs merely recite the elements of a fraud claim (that the misrepresentation was material and that they relied on it to their detriment), without supporting such conclusory assertions with any facts. Such allegations are insufficient under *Iqbal* and *Twombly*.

Plaintiffs allege another fraud claim, this one against Rushmore and Clear Recon. There are no facts alleged explaining this fraud claim against Clear Recon and it is dismissed. As against Rushmore, Plaintiffs allege that Rushmore's statement in its June 6 and August 24, 2018[13] letters in response to the Kinneys' correspondence constitutes fraud. In its June 6th letter, Rushmore stated that the UCC does not apply to residential mortgages and thus Plaintiffs'

---

[13] The Amended Complaint alleges a July 6, 2018 correspondence, but there is no such correspondence attached to the Amended Complaint and the August 24, 2018 correspondence from Rushmore contains the challenged statement.

purported rescission and/or tender of property was ineffective and rejected. This statement was in response to Julie Kinney's correspondence of April 27, 2018, citing to the UCC and purporting to void the Foreclosure Avoidance Program form. Rushmore makes the same statement in its August 24th letter. Plaintiffs fail to plausibly allege that Rushmore knew this statement was false, that Plaintiffs relied on this statement (or even believed it), or that any such reliance caused any damages. Plaintiffs continued to cite to the UCC throughout their correspondence and even at the foreclosure, and continued to assert that they could and did rescind the loan. This fraud claim is dismissed.

### g. Oregon's UTPA

Plaintiffs allege that U.S. Bank Trust's unlawful initiation of foreclosure and assessment of "unauthorized fees" violates Oregon's UTPA. For all the reason's discussed herein, Plaintiff's allegations fail to state claim for unlawful trade practices.

### h. RESPA

Plaintiffs allege that Rushmore violated RESPA. Plaintiffs allege that the Kinneys and their agent Mr. Nietzche sent "qualified written requests" ("QWR") under RESPA to Rushmore on June 7, 2017, July 10, 2018, July 27, 2018, and August 17, 2018, and that Rushmore failed adequately to respond. The documents attached to the Amended Complaint contradict these allegations.

A QWR is written correspondence that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B). A QWR "must address the servicing of the loan, and not its validity." *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009).

Plaintiffs' requests included significant requests that do not qualify as a QWR. They requested irrelevant, nonsensical, and sometimes offensive information. Refusing to respond to such requests is not a violation of RESPA.

Rushmore also provided loan information in response to Plaintiffs' requests, and that is all that is required under RESPA. Plaintiffs allege that they requested an accounting of all payments and fees in their correspondence of July 10th, July 27th, and August 18th, but that allegation is belied by the documents. The July 10th and July 27th requests appear to be the same, are extremely broad, and the only request that could be construed as an accounting was the request for "all Bookkeeping Journal Entries associated with the Loan bearing the Account Number 7600796021, and given to the Borrower William Kinney Jr. and Julie Kinney." This request, however, does not ask Rushmore to conduct an accounting, but instead asks for bookkeeping entries that were given to the Kinneys. The August 18th request asks for "all Bookkeeping Journal entries associated with the Loan to the Borrower." Although this request no longer limits the "bookkeeping journal entries" to only those provided to the Kinneys, it is still not a request for an accounting. Moreover, Rushmore provided the payment history on the loan, which is responsive to the request for "bookkeeping journal entries." Thus, Plaintiffs do not plausibly allege that they asked for an accounting and were refused or ignored.

Nor do Plaintiffs' documents support that they provided any information to Rushmore that they believed their payment amount or past due amount was in error, as required under RESPA. Plaintiffs were disputing the validity of the loan and its chain of title, not the amount owed. Rushmore responded to Plaintiffs' requests regarding ownership and servicing of the loan,

providing the name and contact information for Plaintiffs' loan servicer and the name of the owner of Plaintiffs' loan.

Plaintiffs do not plausibly allege information they requested that qualifies as a QWS to which Rushmore did not respond. Additionally, "damages must flow from the failure of the servicer to provide the information sought by the plaintiff through the QWR." *Givant v. Vitek Real Estate Indus. Grp., Inc.*, 2012 WL 2912357, at *6 (E.D. Cal. July 16, 2012). Plaintiffs do not allege damages flowing from any failure by Rushmore to provide information requested in a QWS.

### i.  Quiet Title

U.S. Bank Trust, Clear Recon, and Rushmore do not assert any claim on title to the Property. It was sold at foreclosure to UHD and UHD is the only entity asserting claim on the Property. This claim is dismissed against these Defendants.

### j.  Vulnerable Person, Lack of Standing to Foreclose, Wrongful Foreclosure, Slander of Title, Fraud in the Inducement, Fraud in the Concealment

All of these claims are based on the allegation that the chain of title was void, U.S. Bank Trust was not the real beneficiary of the 2004 Deed of Trust or owner of the Note, Clear Recon was thus not an authorized Trustee, and Rushmore was not a proper loan servicer or agent of anyone with an interest in the Property. As previously discussed, these allegations are contradicted by the documents attached to the Amended Complaint and thus are not accepted as true.

To the extent Plaintiffs' claims are based on the fact that any of these Defendants (or any other Defendant) did not or cannot provide the original Note, such an allegation fails. As explained by U.S. Magistrate Judge John V. Acosta:

> Courts in this district have repeatedly rejected the "show me the note" argument Edwards advances as unsupported by Oregon law.

> See, e.g., *Chruszch v. Bayview Loan Servicing, LLC*, 2015 WL
> 6756130, at \*2 (D. Or. Nov. 4, 2015) (collecting cases). The
> Oregon Trust Deed Act ("OTDA"), ORS §§ 86.705-.815, does not
> require production of the original promissory note as a prerequisite
> to judicial foreclosure. *Beyer v. Bank of Am.*, 800 F. Supp. 2d
> 1157, 1159 (D. Or. 2011), *vacated and remanded on other*
> *grounds*, 588 F. App'x 672 (9th Cir. 2014); *Stewart v. Mortg. Elec.*
> *Registration Sys., Inc.*, 2010 WL 1055131, at \*12 (D. Or. Feb. 9,
> 2010) ("[T]he [OTDA] does not require presentment of the Note or
> any other proof of 'real party in interest' or 'standing,' other than
> the Deed of Trust."), *report and recommendation adopted*, 2010
> WL 1054775 (D. Or. Mar. 19, 2010). Accordingly, Edwards lacks
> a legal basis for declaratory relief regarding initiation of
> foreclosure without presenting the original Note.

*U.S. Bank Nat'l Ass'n for Greenpoint Mortg. Funding Tr. Pass through Certificates Series 2006-*
*AR4 v. Edwards*, 2017 WL 3379189, at \*4 (D. Or. June 19, 2017); *see also Hubbard v. Bank of*
*Am.*, 2011 WL 2470021, \*3 (D. Or. Apr. 21, 2011), *adopted by* 2011 WL 2462961 (D. Or. June
20, 2011) (noting that "show me the note claims" are "not viable" because the OTDA "does not
require any party to a trustee's sale to produce a physical copy of the original note" (quotation
marks omitted)).

### k. Unjust Enrichment and Unconscionable Contract

Plaintiffs' unjust enrichment and unconscionable contract claims focus on Freedom.
Assuming, however, Plaintiffs intended to allege that U.S. Bank Trust was unjustly enriched for
obtaining payments from Plaintiffs when it was not lawfully the beneficiary of the Trust Deed or
owner of the Note, such an assertion is rejected. Also assuming that Plaintiffs intended to allege
that because U.S. Bank Trust was not lawfully in the chain of title their contract with Plaintiffs
was unconscionable, this claim fails because U.S. Bank Trust was lawfully in the chain of title.

### 2. UHD

UHD purchased the Property at the nonjudicial foreclosure. It was not involved in the
loans, 2002 or 2004 Trust Deeds, notices or statements relating to the foreclosure, or the

foreclosure proceedings, other than as a purchaser. Accordingly, Plaintiffs' abuse of a vulnerable person, slander of title, unjust enrichment, wrongful foreclosure, fraud in the concealment, fraud in the inducement, and intentional and negligent infliction of emotional distress claims are dismissed. Plaintiffs fraud claim, which involves Rushmore's statements regarding the UCC, makes no factual allegations relating to UHD and is dismissed against UHD.

The claims remaining against UHD are quiet title and adverse possession. "To secure a judgment quieting title, plaintiffs must prove that they have a substantial interest in, or claim to, the disputed property and that their title is superior to that of defendants." *Coussens v. Stevens*, 200 Or. App. 165, 171 (2005). This standard requires that "plaintiffs prevail on the strength of their own title as opposed to the weaknesses of defendants' title." *Id.* Plaintiffs do not make any allegations regarding the strength of their title. They admit that they failed to make payments after December 2016. The Court has also found that Plaintiffs fail to state a claim that the foreclosure was improper in any way or that the foreclosing entities lacked authority. Thus, UHD is a bona fide purchaser at a legal nonjudicial foreclosure. Plaintiffs fail to state a claim that there are disputed substantial interests in the Property.

"To prevail on a claim of adverse possession at common law, claimants must 'prove by clear and convincing evidence that they, or they and their predecessors in interest, maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property for a ten-year period.'" *Morris v. Kanne*, 295 Or. App. 726, 731-32 (2019) (quoting *Stiles v. Godsey*, 233 Or. App. 119, 124 (2009)). Plaintiffs did not have *hostile* possession of the property during the time they were the lawful owners of the property. They did not have *hostile* possession until after the foreclosure took place on October 23, 2018. Thus, they haven not had open, notorious,

exclusive, *hostile*, and continuous possession for 10 years. This claim is dismissed with prejudice because amendment would be futile.

### 3. United States

There are no facts alleged against Defendant "United States Corporation Company." No documents attached support any cause of action against the United States government. All claims against this Defendant are dismissed.

### 4. Barrister Support Services

No cause of action is individually asserted against Barrister, and thus only the claims asserted against all Defendants apply to Barrister. The only facts alleged involving Barrister are that Barrister posted the Trustee's Notice of Sale on the Property and that Barrister conducted the nonjudicial foreclosure. The documents attached to the Amended Complaint show that before posting the documents, the Barrister employee attempted personal service on the Kinneys. That is the entire involvement of Barrister in this case and does not support any claim. All claims against Barrister are dismissed.

## K. Conclusion

The Court has liberally construed Plaintiffs' allegations and the documents attached to the Amended Complaint, and afforded Plaintiffs the benefit of any doubt. The Court has considered Plaintiffs' claims alleged against each Defendant, even if not specifically discussed herein. Even under the generous standard afforded *pro se* litigants, Plaintiffs fail to state a claim against any Defendant.

## L. Leave to Amend

For any claim not previously specifically dismissed with prejudice, the Court considers as a whole the allegations in the Amended Complaint the documents attached to the Amended Complaint, and the fact that Plaintiffs were given months to amend their complaint after

numerous motions to dismiss were filed. The Court finds that further amendment would be futile, and any remaining claims are dismissed with prejudice.

## CONCLUSION

The Motions to Dismiss by the moving Defendants (ECF 78, 92, 96, 106, 109, 123, 127, 129, 152) are GRANTED. The Court *sua sponte* finds under Rule 12(b)(6) of the Federal Rules of Civil Procedure that Plaintiffs fail to state a claim against the nonmoving Defendants, including Defendants who have not yet appeared in this Action. Accordingly, Plaintiffs'

Corrected First Amended Verified Complaint (ECF 146) is DISMISSED. Because further

amendment would be futile, this case is dismissed with prejudice. All other pending motions

(ECF 87, 88, 90, 91, 95, 111, 112, 113, 114, 149, 158, 159, 171) are denied as moot.

**IT IS SO ORDERED.**

DATED this 8th day of October, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge